1

2

3

4

5

6

7

8                     IN THE UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10   EARL W. HAMILTON,

11            Petitioner,              No. CIV S-02-0340 DFL DAD P

12       vs.

13   EDWARD ALAMEIDA, et. al.,

14            Respondents.             FINDINGS AND RECOMMENDATIONS

15   _____/

16            Petitioner is a state prisoner proceeding pro se with this habeas corpus action.

17   Petitioner is in custody pursuant to a 1980 San Bernardino County conviction for second degree

18   murder, for which he is serving a term of fifteen years to life in state prison.  In this action

19   petitioner challenges the decision of the California Board of Prison Terms on October 27, 1999,

20   that petitioner was not suitable for parole at that time.  Pursuant to this court's order filed

21   February 19, 2002, petitioner filed an amended petition on March 4, 2002.  Respondents filed

22   their answer to the amended petition on April 10, 2002, and petitioner filed his traverse on April

23   17, 2002.

24            For the reasons set forth below, the undersigned will recommend that petitioner's

25   application for a writ of habeas corpus be denied.

26   /////

1

1

PETITIONER'S CLAIMS

2      Petitioner's initial parole consideration hearing was held in 1987.  The Board

3  denied petitioner a parole date at that hearing and at subsequent parole hearings held in 1988 and

4  1990.  Petitioner was granted a parole date at his third subsequent parole hearing in 1991, but the

5  date was rescinded in 1992.  Petitioner was denied a parole date at subsequent parole

6  consideration hearings in 1993, 1994, 1995, 1996 and 1997.  At his subsequent parole

7  consideration hearing in 1998, petitioner was denied a parole date by the majority decision, but

8  the dissenter on the three-person panel found him suitable for parole.  (Pet. filed Feb. 12, 2002,

9  Ex. Y-1 ("Tr.") at 21-22.[1])

10      Petitioner challenges the Board's denial of a parole date at the subsequent parole

11  consideration hearing held on October 27, 1999.  (Am. Pet. filed Mar. 4, 2002, at (2).)  Petitioner

12  appealed from that decision on March 27, 2000.  (Id., Ex. Y-2.)  The Board of Prison Terms

13  Office of Policy and Appeals denied the appeal on the merits on September 12, 2000.  Petitioner

14  received the decision on December 21, 2000.  (Id., Ex. Y-3.)  On December 22, 2000, petitioner

15  filed a habeas petition in the San Joaquin County Superior Court.  (Id., Ex. X-3.)  In a written

16  decision filed September 20, 2001, the petition was denied on the merits.  (Id.)  A habeas petition

17  filed in the California Court of Appeal on August 2, 2001, was summarily denied on August 9,

18  2001.  (Id., Ex. W-2.)  A habeas petition filed in the California Supreme Court on September 28,

19  2001, was summarily denied on January 29, 2002.  (Id., Ex. V-2.)

20      In his amended petition, petitioner alleges four grounds for relief, which the court

21  summarizes here:

22      (1) the Board gave extra weight to the gravity of petitioner's
        offense when it referred to a second victim, despite the fact that
23      petitioner's conviction did not involve a second victim, and when
        it described the manner in which the crime was carried out as cruel

24

25  _____

    [1]  A complete copy of the transcript of petitioner's October 27, 1999 subsequent parole
26  consideration hearing was provided by petitioner as Exhibit Y-1 to his petition filed February 12,
    2002.  The amended petition does not include a copy of Exhibit Y-1.

and callous, despite the fact that all murders by their very nature are cruel and callous;

(2) the Board declared that petitioner is unsuitable for parole because of his past social and criminal history and his failure to take advantage of previous attempts to correct his criminal conduct, but his criminal history was non-violent and he is a recovering alcoholic who has made permanent life changes in order to avoid the alcohol and drugs that brought about his past social and criminal history and his recidivism;

(3) the Board considered petitioner's gains to be recent and said he needed to maintain those gains over a period of time, but petitioner's gains were made some time ago, have been maintained for the past 20 years, and are not merely recent; and

(4) the Board claimed petitioner's motivation for the crime was inexplicable or trivial and discounted the roles played by stress and chronic alcoholism, as well as other factors favorable to petitioner.

(Am. Pet. at (5)-(6) & Attachs. 5a-5c & 6a-6p.)

RESPONDENTS' ANSWER

Respondents state that petitioner was sentenced to an indeterminate state prison term of 15 years to life for his conviction of second degree murder after he shot his sister in the chest and head, killing her, because he felt she was an unfit mother and promiscuous.

Respondents assert that the Board properly found petitioner unsuitable for parole and deferred a further hearing for one year due to the nature of his commitment offense, the cruel and callous manner in which the crime was carried out, his unstable or tumultuous social history, and his failure to profit from society's previous attempts to correct his criminality. In response to petitioner's four grounds for relief, respondents admit that the Board found petitioner's crime was carried out in a cruel and callous manner, admit that the Board found petitioner failed to profit from society's previous attempts to correct his criminality, deny that the Board found petitioner not suitable for parole on the ground that his gains were recent, and admit that the Board found the motive for petitioner's crime inexplicable or very trivial in relation to the offense. Respondents deny that the Board's decision violated petitioner's Fourteenth Amendment rights and allege that petitioner has failed to raise a cognizable federal question.

1          Respondents argue that the petition should be dismissed for lack of subject matter

2     jurisdiction.  Respondents assert that jurisdiction is available only when there is some

3     transgression of federal law binding on state courts and is unavailable for alleged errors in the

4     interpretation or application of state law.  Respondents contend that the alleged violations of

5     Fourteenth Amendment rights in this case do not present a substantial federal question sufficient

6     to invoke the jurisdiction of an Article III court.  Respondents cite cases holding that a prisoner

7     has no constitutional right to be conditionally released before the expiration of a valid sentence

8     but that a prisoner may be entitled to some measure of due process where state statutes or

9     regulations create a liberty interest in parole release.  Respondents argue that California law does

10    not create such an interest and that the state legislature has given the Board of Prison Terms

11    virtually unfettered discretion to base a parole suitability decision on a wide and generalized

12    consideration of society's interest in the parole release decision.  Respondents contend that the

13    applicable statutes and regulations do not guarantee parole release to prisoners who merely jump

14    through certain hoops.  Respondents point to Sandin v. Conner, 515 U.S. 472 (1995), and argue

15    that the denial of a parole date does not impose an atypical hardship in the context of ordinary

16    prison life.  Respondents ask the court to deny the petition on the ground that there is no liberty

17    interest at stake in this case.

18          Respondents argue further that, if the case does present a federal question, the

19    petition should be denied because the state courts' adjudication of petitioner's claims did not

20    result in a decision contrary to law or involving an unreasonable application of clearly

21    established federal law as determined by the Supreme Court.  Respondents assert that federal law

22    requires that there be some evidence in the record to support a parole decision and that the

23    evidence bear some indicia of reliability.  Respondents note that this standard is minimally

24    stringent and a parole decision should be upheld if there is any evidence in the record to support

25    it.

26    /////

1    Respondents contend that the state court's decisions to deny petitioner's habeas

2 petition were not contrary to law because there was certainly some evidence to support the

3 Board's decision:  the gravity of petitioner's crime, i.e., second degree murder; the fact that

4 petitioner committed the murder in an extremely cruel and callous manner; petitioner's unstable

5 social history and prior criminality, which includes a long history of alcohol abuse; and

6 petitioner's failure to profit from previous attempts to correct his criminality.  Respondents argue

7 that petitioner does not deny the Board's findings on these matters and that petitioner admits he

8 has an unstable and lengthy history of criminality as well as a history of failing to profit from

9 attempts to correct his criminality.  Respondents contend that petitioner merely argues he was

10 under considerable stress compounded by chronic alcoholism when he murdered his sister for

11 allowing her daughter to be molested.  Respondents conclude that petitioner's excuses are

12 insufficient to render the Board's decision unreliable and indeed demonstrate that the Board

13 properly found that petitioner is at risk of re-offending if released back into the community,

14 where he can be expected to be exposed to myriad stressors, including the easy availability of

15 alcohol.  On this record, respondents ask the court to deny the petition.

16                                    PETITIONER'S TRAVERSE

17    Petitioner argues that Fourteenth Amendment due process entitles him to have

18 state and local governments follow both the letter and the spirit of their own laws and regulations

19 and that due process is not satisfied by a parole hearing that merely determines that a crime was

20 committed.  Petitioner contends that due process requires the state to conduct parole hearings that

21 comply with the spirit of state law and that the federal court has jurisdiction under the Fourteenth

22 Amendment where the state fails to comply with the spirit of state law in the way it conducts

23 parole hearings.

24    Petitioner sets out and discusses the state statutes and regulations governing

25 parole.  He contends that all of the factors that weigh against parole are factors that cannot be

26 changed and do not prove he is an unreasonable risk to public safety at the present time.  He also

5

1  contends that the factors that weigh in favor of parole in his case outweigh the negative factors.

2  He argues that the Board's broad discretionary powers do not permit the Board to violate due

3  process and equal protection guarantees or go against the intentions of the state legislature, state

4  courts, and state regulations.  He reiterates that the positive factors acknowledged by the Board

5  are gains he has maintained over twenty years in prison.  He concludes that the Board failed to

6  conduct his 1999 parole consideration hearing within the constraints of state law and therefore

7  violated petitioner's federal rights.  Petitioner asks the court to rule against the respondents, order

8  an evidentiary hearing for an unspecified purpose, find merit in his claims, and appoint counsel.

9                                                    ANALYSIS

10  I.  Applicable Standards

11               A writ of habeas corpus is available under 28 U.S.C. § 2254 "only on the basis of

12  some transgression of federal law binding on the state courts."  Middleton v. Cupp, 768 F.2d

13  1083, 1085 (9th Cir. 1985) (citing Engle v. Isaac, 456 U.S. 107, 119 (1982)).  Federal habeas

14  relief is not available for errors in the interpretation or application of state law.  Estelle v.

15  McGuire, 502 U.S. 62, 67-68 (1991); Givens v. Housewright, 786 F.2d 1378, 1381 (9th Cir.

16  1986).

17               Section 2254 as amended in 1996 sets forth the following standards of review to

18  be applied by federal courts to state court decisions:

19                    An application for a writ of habeas corpus on behalf of a person
              in custody pursuant to the judgment of a State court shall not be
20            granted with respect to any claim that was adjudicated on the
              merits in State court proceedings unless the adjudication of the
21            claim–

22                    (1)  resulted in a decision that was contrary to, or involved an
              unreasonable application of, clearly established Federal law, as
23            determined by the Supreme Court of the United States; or

24                    (2)  resulted in a decision that was based on an unreasonable
              determination of the facts in light of the evidence presented in the
25            State court proceeding.

26  /////

                                                        6

1   28 U.S.C. § 2254(d)(1) and (2).  See Penry v. Johnson, 532 U.S. 782, 792-93 (2001); Williams v.

2   Taylor, 529 U.S. 362 (2000); Lockhart v. Terhune, 250 F.3d 1223, 1229 (9th Cir. 2001).

3           The Due Process Clause of the Fourteenth Amendment prohibits state action that

4   deprives any person of life, liberty, or property without due process of law.  A person alleging a

5   violation of the right to procedural due process must establish that he was deprived of an interest

6   cognizable under the Due Process Clause and that the procedures attendant upon that deprivation

7   were not constitutionally sufficient.  See Kentucky Dep't of Corrections v. Thompson, 490 U.S.

8   454, 459-60 (1989); Board of Regents v. Roth, 408 U.S. 564, 571 (1972).  In the parole context,

9   a petitioner alleging due process claims must demonstrate that he has a protected liberty interest

10  in parole and show that he was denied one or more of the procedural protections that must be

11  provided, i.e., the process due when a liberty interest is at stake.

12          The Ninth Circuit has determined that "California's parole scheme gives rise to a

13  cognizable liberty interest in release on parole."  McQuillion v. Duncan, 306 F.3d 895, 902 (9th

14  Cir. 2002).  However, because parole-related decisions are not part of the criminal prosecution,

15  the full panoply of rights due a defendant in criminal proceedings is not constitutionally

16  mandated.  Jancsek v. Oregon Bd. of Parole, 833 F.2d 1389, 1390 (9th Cir. 1987).  Due process

17  is satisfied in the context of a hearing to set a parole date where the prisoner is afforded notice of

18  the hearing, an opportunity to be heard and, if parole is denied, a statement of the reasons for the

19  denial.  Id. (citing Greenholtz v. Inmates of Nebraska Penal & Correctional Complex, 442 U.S. 1,

20  16 (1979)).  See Morrissey v. Brewer, 408 U.S. 471, 481 (1972) (describing the procedural

21  process due in cases involving parole issues).  Violation of state mandated procedures will

22  constitute a due process violation only if the violation causes a fundamentally unfair result.

23  Estelle, 502 U.S. at 65

24          In California, the setting of a parole date for a state prisoner is conditioned on a

25  finding of suitability.  Cal. Penal Code § 3041; Cal. Code Regs. tit. 15, §§ 2401 & 2402.  As long

26  as the state's decision regarding parole suitability is supported by "some evidence," the federal

1    court must find that the decision complies with the requirements of federal due process.  Morales

2    v. California Dep't of Corrections, 16 F.3d 1001, 1005 (9th Cir. 1994), rev'd on other grounds,

3    514 U.S. 499 (1995); Perveler v. Estelle, 974 F.2d 1132, 1134 (9th Cir. 1992) (per curiam).  The

4    "some evidence" standard is met if there is evidence from which the conclusion of the

5    administrative tribunal can be deduced, Toussaint v. McCarthy, 801 F.2d 1080, 1105 (9th Cir.

6    1986), and the decision bears some indicia of reliability, Jancsek, 833 F.2d at 1390; Perveler, 974

7    F.2d at 1134.  The "some evidence" standard is minimally stringent, and a decision must be

8    upheld if there is any evidence in the record that could support the conclusion reached.  Powell v.

9    Gomez, 33 F.3d 39, 40 (9th Cir. 1994) (citing Superintendent v. Hill, 472 U.S. 445, 455-56

10   (1985) and Cato v. Rushen, 824 F.2d 703, 705 (9th Cir. 1987)).  Determining whether the "some

11   evidence" standard is satisfied does not require examination of the entire record, independent

12   assessment of the credibility of witnesses, or the weighing of evidence.  Toussaint, 801 F.2d at

13   1105.  The question is whether there is any reliable evidence in the record that could support the

14   conclusion reached.  Id.

15          A petitioner raising an equal protection claim in the parole context must

16   demonstrate that he was treated differently from other similarly situated prisoners and that the

17   Board lacked a rational basis for its decision.  See McGinnis v. Royster, 410 U.S. 263, 269-70

18   (1973) (reviewing differences in release dates under rational basis test and balancing the state's

19   efforts to ensure that prisoners are sufficiently prepared for release to protect public safety, on the

20   one hand, with the prisoner's interest in release, on the other hand).

21   II.  State Court Decisions

22          In the present case, both the California Supreme Court and the California Court of

23   Appeal summarily denied habeas petitions attacking the Board's October 27, 1999 decision.

24   (Am. Pet., Exs. V-2 & W-2.)  The order issued by each of these courts is "an unexplained order,"

25   i.e., "an order whose text or accompanying opinion does not disclose the reason for the

26   judgment."  Ylst v. Nunnemaker, 501 U.S. 797, 802 (1991).  When confronted with a state

court's unexplained order, the federal court applies the following presumption:  "Where there has been one reasoned state judgment rejecting a federal claim, later unexplained orders upholding that judgment or rejecting the same claim rest upon the same ground."  Id. at 803.  In applying the look-through presumption, unexplained orders are given no effect.  Id. at 804.

Here, there was a reasoned state judgment by the San Joaquin County Superior Court.  (Am. Pet., Ex. X-3.)  This court will look through the unexplained orders of the California Supreme Court and the California Court of Appeal to the decision of the San Joaquin County Superior Court in order to determine whether the state courts' adjudication of petitioner's federal claims satisfies the standards set forth in § 2254.

In his state habeas petitions, petitioner sought relief on the same claims presented in his federal habeas petition.  The San Joaquin County Superior Court addressed each claim.  (Am. Pet., Ex. X-3 at 1-2.)  With regard to the weight given to the gravity of the offense and petitioner's assertion that the Board in effect charged him with an additional crime by referring to a second victim, the court found that petitioner had misconstrued the Board's findings.  (Id. at 1.)  The court cited the state regulation that requires the Board to consider "[a]ll relevant, reliable information available to the panel."  (Id. (citing Cal. Code Regs. tit. 15, § 2402).)  The same regulation specifies that relevant information includes past criminal history, which in turn includes "involvement in other criminal misconduct which is reliably documented" and "the base and other commitment offenses, including behavior before, during and after the crime."  (Id. (citing § 2402(b)) .)  The court observed that "[i]n petitioner's case, the panel's decision was based, in part, upon the facts of the underlying crime - which did involve two victims regardless of petitioner's plea - as well as his prior record."  (Id. at 1.)  The court reviewed the Board's decision and concluded that the facts cited were "more than adequate to support the panel's conclusion that the crime was carried out in an 'especially cruel or callous manner,' demonstrating 'exceptionally callous disregard for human suffering.'"  (Id. at 2.)  The court found no evidence that petitioner's rights had been violated with regard to the weight given to the

9

1   gravity of his offense and the Board's consideration of the facts concerning the person who

2   witnessed the shooting of his sister.  (Id.)

3          With regard to alleged due process and equal protection violations arising from

4   the Board's reliance on the manner in which the murder was carried out and petitioner's social

5   and criminal history, the court noted that the Board was required by law to consider these facts

6   even if they will never change.  Section 2402(b) lists "the circumstances of the prisoner's social

7   history," "past criminal history," and the commitment offense as information that "shall be

8   considered."  The court rejected petitioner's contention that considering facts that will not change

9   "is in essence resentencing him to life without parole."  The court explained that the Board's

10  decision was not based on such facts alone.  Those facts must be and were weighed against the

11  gains made by petitioner and the positive factors in his case, and therefore the Board did not in

12  effect resentence petitioner to life without parole.  The court came to the same conclusion with

13  regard to the Board's finding that petitioner failed to take advantage of past attempts to correct

14  his conduct.  (Id.)

15         With respect to the alleged due process and equal protection violations arising

16  from the Board's finding that petitioner's gains were recent, the court found that the evidence

17  considered by the Board was properly weighed under the applicable law, there was sufficient

18  evidence supporting the Board's decision and there was no evidence of abuse of discretion.  (Id.)

19  The court disagreed with petitioner's claim that the Board failed to take mitigating factors into

20  consideration.  "The transcript indicates that these factors were brought to the panel's attention at

21  petitioner's hearing.  The panel simply concluded that these factors did not outweigh the

22  circumstances which tend to show unsuitability."  (Id.)

23  III.  Discussion

24         At the parole suitability hearing conducted on October 27, 1999, the Board

25  announced its decision on the record, finding that petitioner was not suitable for parole and that

26  he would pose an unreasonable risk of danger to society or a threat to public safety if released

10

1   from prison.  (Tr. at 27)  The Board stated that "[t]he number one reason was the commitment

2   offense itself," which the Board found was carried out "in an especially cruel or callous manner,"

3   one that demonstrated "an exceptionally callous disregard for human suffering," and for which

4   the motive "was inexplicable or very trivial in relation to the offense."  (Id.)

5           The Board cited the following facts regarding the commitment offense:  Petitioner

6   "armed himself with a shotgun and went to a deserted area where his sister and another person,

7   their vehicle had broken down and he went there with the intent to assist them and when he got

8   there, he became angry, or was angry when he got there, took the shotgun, shot his sister in the

9   chest" and when the witness attempted to flee "he shot at the witness, wounding the witness, and

10  then he went over and shot his sister a second time in the head, killing her."  (Id. at 27-28.)  The

11  Board also cited petitioner's "history of unstable or tumultuous relationships with others," his

12  failure to profit from previous attempts to correct his criminality, including adult probation and

13  county jail, and his long history of alcohol abuse and arrests for driving under the influence.  (Id.

14  at 28.)  It found that petitioner's gains were recent and stated that he must demonstrate an ability

15  to maintain his gains over an extended period of time.  (Id.)  The Board commended petitioner

16  for remaining disciplinary free, participating in AA, upgrading vocationally and educationally,

17  and participating in self-help and therapy programs, but found that these positive factors did not

18  outweigh the factors of unsuitability.  (Id.)  The Board recommended that petitioner remain

19  disciplinary free and continue to participate in self-help and therapy programs if possible.

20          The Board's findings concerning petitioner's commitment offense, the manner in

21  which the offense was carried out, petitioner's inability to explain his motive, and petitioner's

22  social and criminal history are not disputed, except for petitioner's objection to consideration of

23  the witness as a victim, and all of these matters are supported by the record.  (See Tr. at 6-13.)[2]

24
       [2]  Because of this other evidence relied upon by the Board, this is not a case where
25  petitioner's due process rights are implicated by repeated parole denials based upon continued
    reliance on the unchanging factors of the commitment offense and conduct prior to imprisonment
26  in the face of a positive psychological report and substantial evidence of remorse and rehabilitation.

1       Although petitioner disagrees with the Board's assessment of his gains as recent,

2  that finding is supported by the fact that all of petitioner's gains have occurred during and as a

3  result of his confinement.  In light of petitioner's inability to explain why he shot and killed his

4  sister and his inclination to blame alcohol for his actions on the day he killed his sister as well as

5  for his inability to offer a reason for his actions, it is not surprising that the Board was concerned

6  about petitioner's ability to avoid alcohol dependence and abuse if released from prison.  In

7  response to direct questioning, petitioner stated that he was still in AA and was "working the

8  Steps." (Tr. at 13-14.)  He offered no details, and when the panel member asked him whether he

9  knew the steps, petitioner responded that he "didn't memorize them all" but "can talk about some

10  of them." (Tr. at 14.)  The panel member asked petitioner if he has really dedicated himself to

11  the AA program, and petitioner responded that he has but admitted, when asked whether he

12  probably should know the steps, that he should.  (Id.)

13       The most recent psychiatric report offered at the hearing was a report by Dr.

14  Obrochta dated February 11, 1999.  Dr. Obrochta described petitioner's alcohol dependence

15  history as being "in institutional remission." (Tr. at 14.)  Dr. Obrochta assessed petitioner as

16  "average in violence potential" and noted that "alcohol is seen as the precursor to any violence in

17  [petitioner's] adjustment." (Tr. at 15.)  During the discussion of petitioner's parole plans, a

18  second panel member indicated his concern regarding petitioner's continued participation in AA

19  on parole:

20          DEPUTY COMMISSIONER HARMON:  Let me make a
             suggestion to you.  You know, one of your letters, or I guess it was

21           this, one of these documents.  Anyway, it indicated that once you
             got into the area that you were going to live in that you would try to

22           locate a alcohol AA program to participate in.  You know, in light
             of the fact of what you did, I would sure know what the address is

23           of the local AA program in either area.  You know, that's not
             something that you should take lightly.  I don't.  The idea that

24           you're going to be in a program immediately upon release is real
             important to me.  You know, if you blew a .21 after five hours after

25

26  See Biggs v. Terhune, 334 F.3d 910, 917 (9th Cir. 2003).

1    the crime and you had the ability to blow away your sister, I sure
     want to make sure you're into an AA Program from the point you
2    get out until the day you die, you know what I'm saying?

3            INMATE HAMILTON:  Yes, sir, I'm saying that's part of
     my plan too.
4
             DEPUTY COMMISSIONER HARMON:  What I'm saying
5    is that it's still up in the air.  You don't even have an idea what
     those addresses are in either location.
6
             INMATE HAMILTON:  It's easy to find them in a phone
7    booth [sic].

8            DEPUTY COMMISSIONER HARMON:  There you go.
     Maybe some updating is in order. . . .
9

10   (Tr. at 20-21.)  In closing, petitioner's attorney noted his "severe drinking problem" and the

11   diagnosis of alcohol dependence in institutional remission.  (Tr. at 22.)  She pointed out that

12   petitioner had no disciplinary write-ups for "pruno" or substance abuse.  She asserted that

13   petitioner is committed to sobriety, as demonstrated by his past 15 years in AA, his avoidance of

14   substance abuse in the institution, and his current involvement in 12-step programs.  (Id. at 22-

15   23.)  In his own closing remarks, petitioner stated that he has "been through a lot of hard times"

16   in prison and has not taken a drink and that he has "been involved with AA for 15 years, clean

17   and sober."  (Id. at 25.)

18           Applying the minimally stringent "some evidence" standard to the record before

19   the court, the undersigned finds that there is reliable evidence in the record supporting the

20   Board's decision.  Although petitioner points to facts tending to indicate that he may not pose a

21   threat to society if released, the Board was not obligated to prefer that evidence over the evidence

22   it chose to rely upon.  The record does not reflect any way in which  petitioner was treated

23   differently from similarly situated prisoners.  For these reasons, the court finds that the state

24   courts' adjudication of petitioner's due process claims and equal protection claims did not result

25   in a decision that was contrary to, or involved an unreasonable application of, clearly established

26   federal law or a decision that was based on an unreasonable determination of the facts in light of

                                                    13

the evidence presented in the state court proceedings.  Petitioner is not entitled to federal habeas relief with regard to the Board's denial of a parole date after the hearing on October 27, 1999.

Accordingly, IT IS HEREBY RECOMMENDED that petitioner's application for a writ of habeas corpus be denied and that this action be dismissed.

These findings and recommendations will be submitted to the United States District Judge assigned to this case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty days after being served with these findings and recommendations, any party may file and serve written objections with the court.  A document containing objections should be titled "Objections to Magistrate Judge's Findings and Recommendations."  Any reply to objections shall be filed and served within ten days after service of the objections.  The parties are advised that failure to file objections within the specified time may waive the right to appeal the District Court's order.  See Martinez v. Ylst, 951 F.2d 1153 (9th Cir. 1991).

DATED: July 5, 2005.

DALE A. DROZD
UNITED STATES MAGISTRATE JUDGE

DAD:13
hami0340.157

14